IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

BARRY EMMETT,                            )
TDCJ #1383329,                           )
                    Plaintiff,           )
                                         )        Civil No. 7:10-CV-127-O
v.                                       )
                                         )
MS. WRIGHT, *et al.*,                    )
                    Defendants.          )


## MEMORANDUM OPINION AND ORDER

        This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate currently confined in

the Estelle Unit of the Texas Department of Criminal Justice in Huntsville, Texas.  Defendants are

correctional officers, medical care personnel, and a warden at the Allred Unit.  Plaintiff claims that

Defendants failed to protect him from an attack by another inmate and that he was thereafter denied

medical care for his injuries. Complaint ¶ V.  He seeks $135,000.00 in monetary damages.  *Id.* at

¶ VI.

        To establish a civil rights claim against a prison official for failure-to-protect, a plaintiff

"must show that he is incarcerated under conditions posing a substantial risk of serious harm and that

prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d

530, 533 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "Deliberate

indifference" is a subjective standard which occurs only where a prison official knows of and

disregards a substantial risk to the inmate's health or safety.  *Farmer*, 511 U.S. at 837.  Deliberate

indifference thus requires that "the [offending] official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Neals*, 59 F.3d at 533 (quoting *Farmer*, 511 U.S. at 837). "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiff alleges that, on three occasions, he told Allred Unit officials that his life was in danger. Complaint ¶ V. He claims that, during three different meetings, the Uniform Classification Committee refused to move him to a safer side of the prison. *Id.* Plaintiff states that, after his requests were denied, he was attacked by an inmate who cut him several times with a weapon. *Id.* He claims to have been thereafter denied medical care for his wounds. *Id.*

Plaintiff was given the opportunity to expound on the factual allegations of his complaint by way of questionnaire. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994) (requiring further development of insufficient factual allegations before dismissal as frivolous is proper); *Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976) (affirming use of questionnaire as useful and proper means for court to develop factual basis of *pro se* plaintiff's complaint). However, he failed to articulate any facts which could indicate that Defendants were actually aware of and disregarded a substantial risk of Plaintiff being attacked by his cellmate. Plaintiff claims that he informed Defendants that either he or his cellmate needed to be moved or there was going to be an altercation. Plaintiff's Answer to the Court's Question No. 2. However, he does not provide any factual support for his belief that there was a risk of harm. Nor does Plaintiff provide any information relating to facts of which Defendants were aware that could have indicated a risk of harm. *See id.* at Nos. 2-6; Complaint ¶ V; Plaintiff's Brief in Support of Complaint.

To the extent, if any, that Plaintiff was threatened with violence by his cellmate prior to the attack, such threats are common in the prison environment. *Newton v. Black*, 133 F.3d 301, 307 (5th

Cir. 1998).  If action on the part of prison officials was constitutionally required every time an inmate reported a perceived risk of violence, inmates would quickly learn to control the prison environment simply by making threats and alleging risks of danger.  In the instant case, Plaintiff's allegation that he reported the risk of an altercation with his cellmate, without more, does not show that Defendants actually perceived, and ignored, a substantial risk of harm.

Next Plaintiff claims that he was denied medical care for cuts inflicted by his cellmate, who attacked him with a homemade knife, and for a bone in his hand that was broken during the attack. Complaint ¶ V; Plaintiff's Answers to the Court's Questions No.  8.

In order to state a colorable claim for the denial of medical care under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).  A delay in medical care can rise to the level of a constitutional violation if the delay results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990).  However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).

Plaintiff alleges that he was attacked in early July 2009.  Complaint ¶ V, Attachment.  On or about July 22, 2009, when he "could no longer stand it," Plaintiff put in a request for medical attention. *Id.*  Emmett told the medical department that he believed his hand was broken and that

he needed a support brace. *Id.* He claims that he did not receive the brace until six weeks later and that he was not given any medication to relieve his pain during that six week period. *Id.* Plaintiff further alleges that a medical document indicating that he received a splint in mid or late August was falsified. *Id.*

In his answers to the Court's questions, Plaintiff concedes that, on July 7, 2009, he was seen by a nurse, but he claims that she failed to take a picture of his wounds and failed to notice his swollen hand. Plaintiff's Answer to the Court's Question No. 9. He further claims that the nurse falsified the medical record by indicating that she cleaned a wound with betadine. *Id.* Plaintiff states that when he asked the nurse for stitches and for the wound to be cleaned, she told him, "It scabbed up, it's just fine." *Id.* at No. 11. Plaintiff states that an x-ray taken of his hand indicated a "comminuted fracture." *Id.* at No. 9. He alleges that he did not receive proper medical care until September 7, 2009 when he was given a splint for his hand. *Id.*

Under the facts alleged by Plaintiff, the standard for deliberate indifference is not met. The gravamen of Plaintiff's medical care complaint is that the medical care he believed necessary was not provided. Plaintiff has identified a number of medical care professionals who examined him after the attack by his cellmate. Plaintiff's Answer to the Court's Question No. 9. Implicit in Plaintiff's claims is his belief that the medical care provided was insufficient, erroneous, or inappropriate. Such a complaint amounts to a disagreement over the nature of the medical care provided rather than any denial thereof. Disagreements over medical care decisions are not actionable under the Civil Rights Act. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). As long as jail medical personnel exercise professional medical judgment, their behavior will not

violate a prisoner's constitutional rights.  *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

Plaintiff concedes that, once diagnosed, he was provided with a splint for his hand.

      To the extent, if any, that Plaintiff's medical care claims are grounded in negligence, his

federal complaint is without merit.  Allegations of negligence do not present a cognizable basis for

relief under the Civil Rights Act.  *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding that

negligence is not actionable under § 1983); *Davidson v. Cannon*, 474 U.S. 344 (1986) (same).

      To the extent, if any, that Plaintiff presents a claim of medical negligence, such a claim could

be addressed under state substantive law.  Therefore, the next issue in this case is whether this court

has jurisdiction to entertain Plaintiff's claims under Texas state law.

      "[S]ubject-matter jurisdiction is not waivable, and the federal courts are under a continuing

duty to inquire into the basis of jurisdiction in the district court."  *Warren v. U.S.*, 874 F.2d 280, 281-

82 (5th Cir. 1989) (citing *Smith v. Booth*, 823  F.2d 94, 96 (5th Cir. 1987)).  "[T]he District Court

is vested with authority to inquire at any time whether the [ ] conditions [to the exercise of its

jurisdiction] have been met."  *Broussard v. U.S.*, 989 F.2d 171, 176 (5th Cir. 1993) (quoting *McNutt

v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  When a complaint presents no

federal question, 28 U.S.C. § 1332 requires complete diversity of citizenship and $75,000 in

controversy to invoke the jurisdiction of a federal court.  From the face of Plaintiff's complaint, it

is apparent that he and Defendants are all citizens of Texas.  *Complaint ¶ IV.*  Because there is no

diversity of citizenship, Plaintiff's medical care complaint, construed as a diversity action, must be

dismissed for lack of jurisdiction.

      For the foregoing reasons, it is ORDERED that Plaintiff's federal claims are DISMISSED

with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

It is further ORDERED that Plaintiff's complaint, liberally construed as a diversity action raising state law claims, is DISMISSED without prejudice pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of jurisdiction.

SO ORDERED this 11th day of April, 2013.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**